b

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **RICHARD T. FISH, ET AL.,**<br>**Plaintiff** | **CIVIL DOCKET NO. 1:23-CV-00092** |
| **VERSUS** | **DISTRICT JUDGE DRELL** |
| **MERIT ENERGY CO., L.L.C., ET AL.,**<br>**Defendants** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand filed by Plaintiffs Richard T. Fish and Krista B. Fish.  ECF No. 28.  Defendant Select Oilfield Services, L.L.C. ("Select") also filed a Motion to Dismiss for failure to state a claim.  ECF No. 39.

Plaintiffs have not stated a viable claim against Select.  Therefore, Select was improperly joined, and its citizenship should be disregarded for purposes of diversity jurisdiction.  Plaintiffs' Motion to Remand (ECF No. 28) should be DENIED, and Select's Motion to Dismiss (ECF No. 39) should be GRANTED.

## I.    Background

Plaintiffs filed this "legacy lawsuit" against Merit Energy Co., L.L.C. ("Merit"), Oxy U.S.A., Inc. ("Oxy"), Anadarko E & P Onshore, L.L.C. ("Anadarko"), and Select in

the Louisiana Ninth Judicial District Court in Rapides Parish.[1]  Plaintiffs assert that Defendants contaminated their property while conducting oil and gas activities. Plaintiffs seek remediation and monetary damages.  ECF No. 1-2.

Defendants removed pursuant to 28 U.S.C. § 1332, asserting in their Notice of Removal (ECF No. 1) that Select – a resident defendant – was improperly joined. However, the original Notice of Removal stated that Select was a citizen of Louisiana (ECF No. 1 at 9, 12).  Subsequently, Defendants timely moved to amend the notice of removal.  ECF No. 22.  Select filed a Diversity Disclosure Statement to show that it is actually a citizen of Florida, and not Louisiana.  ECF No. 24.  And Defendants' Amended Notice of Removal reflects the same.  ECF No. 31.

Plaintiffs opposed that amendment, however, and now seek remand.  ECF Nos. 28, 32.  Select has moved for dismissal.  ECF No. 43.  And no answers have been filed.

## II.    <u>Law and Analysis</u>

Plaintiffs contend that Select is a Louisiana company, and as such, that the Court lacks diversity jurisdiction.  ECF Nos. 1 at 12, 1-3 at 1.[2]  Plaintiffs also claim that diversity is not apparent on the face of the Notice of Removal because the citizenship of

---

[1] "A 'legacy lawsuit' is a suit filed by a landowner 'seeking damages from oil and gas exploration companies for alleged environmental damage[.]'" *United Specialty Insurance Co. v. Sandhill Production, Inc.*, 526 F. Supp. 3d 189, 192 (W.D. La. 2021) (citing *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So. 3d 234, 238 n.1)). "These suits have this name 'because they often arise from operations conducted many decades ago, leaving an unwanted "legacy" in the form of actual or alleged contamination.'" *Id.*

[2] All other Defendants are citizens of Texas and/or Delaware.

2

Merit has not been properly alleged.

### A. The amendment to the notice of removal was appropriate.

Plaintiffs opposed amendment of the Notice of Removal, contending it was untimely. "A defendant is free to amend a notice of removal within the thirty day period as set forth in § 1446(b)." *Marshall v. Skydive America South*, 903 F. Supp. 1067, 1070 (E.D. Tex. 1995) (citing *Mayers v. Connell*, 651 F. Supp. 273, 274 (M.D. La. 1986), and *Courtney v. Benedetto*, 627 F. Supp. 523, 527 (M.D. La. 1986)). "Once the thirty day period has expired, any amendments to the notice of removal must be made pursuant to 28 U.S.C. § 1653." *Id.*[3]

"The right of a defendant to amend the notice of removal under § 1653 is a limited one because amendments are permitted solely to cure 'defective allegations of jurisdiction' and cannot be used to amend 'a substantial defect in removal proceedings.'" *Marshall*, 903 F. Supp. at 1070-71 (citing *Courtney*, 627 F. Supp. at 527). "Thus, § 1653 provides a method for curing defective allegations of jurisdiction where the defect is merely one of the pleading and not of an absence of proof of facts necessary to establish diversity of citizenship." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 806 (5th Cir. 1991). Section 1653 should be construed liberally. *See McGovern v. American Airlines, Inc.*,

---

[3] "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1).

511 F.2d 653, 654 (5th Cir. 1975).

Here, the 30-day period for filing a notice of removal had expired when Defendants filed their Amended Notice of Removal. As such, § 1653 governs. The original notice alleged that Select was improperly joined, but represented that Select was a Louisiana citizen. Defendants' contended that representation was an error. Regardless of the merits of Defendants' position that Select is a citizen of Florida, Defendants moved to correct a defect of pleading. Accordingly, the amendment was warranted under § 1653.[4]

### B.    Select is a Louisiana citizen for purposes of diversity jurisdiction.

According to its "Diversity Jurisdiction Disclosure Statement," Select is a limited liability company whose sole member is Barry Salsbury ("Salsbury"). ECF No. 23. Select claims that Salsbury is a citizen of Florida. The citizenship of a limited liability company is determined by the citizenship of all its members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008). Accordingly, the issue of complete diversity turns upon Salsbury's citizenship.[5]

"[A] 'party's residence in a state alone does not establish domicile' absent evidence

---

[4] The Order granting leave to amend (ECF No. 30) was not, however, "premature." A Notice of Motion Setting (ECF No. 27) set forth a briefing schedule, allowing Plaintiffs 21 days to oppose the motion. However, the circumstances indicated that briefing may have been an unwarranted delay at that stage. As such, the undersigned exercised discretion to grant the motion to amend without briefing.

[5] Plaintiffs argue that the Notice of Removal does not adequately set forth Merit's citizenship. But the Notice of Removal specifically indicates that Merit's members are all citizens of Texas. ECF No. 1 at 7-8. Accordingly, Merit is a citizen of Texas.

of that party's intent to remain in the state. To determine a party's domiciliary intent in traditional diversity cases, courts have considered 'the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.'" *Dozier v. GoAuto Insurance Co.*, 2022 WL 1226918, at *4 (W.D. La. 2022) (citing *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996)). "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." *Coury*, 85 F.3d at 251.

Defendants state that Salsbury maintains "residences" in both Louisiana and Florida, but that his "domicile" is in Florida. ECF No. 31 at 9. In his unsworn statement, Salsbury states that he lives in Louisiana part of the year and in Florida part of the year; he has a Florida driver's license; he votes in Florida; he owns real property in Florida that he claims is his primary residence; and he "claims" Florida as his domicile. ECF No. 22-4.

However, Plaintiffs have established that Salsbury: (1) is registered to vote in both Florida (ECF No. 32-1 at 2) and in Louisiana (ECF No. 32-1 at 6); (2) owns a beach condominium in Florida and a home in Louisiana (ECF No. 32-1 at 8, 11), and; (3) claims a homestead exemption on his home in Louisiana only (ECF No. 32-1 at 9, 11). The records of the Louisiana Secretary of State show that Select has been registered as a limited liability company in Louisiana since 2010 (ECF No. 32-1 at 14, 17). Select's

office and mailing address are in Belle Chasse, Louisiana (ECF No. 32-1 at 23). And Select's October 2022 Annual Report, filed with the Louisiana Secretary of State, reflects that Salsbury is Select's sole member/manager, and lists Salsbury's home address in Slidell, Louisiana. ECF No. 32-1 at 24.

The weight of record evidence indicates that, for purposes of diversity jurisdiction, Select (Salsbury) is a Louisiana citizen. Salsbury's personal and civic activities in Florida – as well as his subjective view of his "domicile" – certainly carry some weight in the analysis. However, again, "it is domicile rather than mere residency that decides citizenship for diversity purposes, and 'an allegation of residency alone 'does not satisfy the requirement of an allegation of citizenship.'" *Kapitus Servicing, Inc. v. MAC Contracting Grp., Inc.*, No. 22-CV-1316, 2022 WL 18671137, at *1 (W.D. La. May 23, 2022) (internal citations and quotations omitted). "A person may reside in multiple states simultaneously, but he has only one domicile at a time, and it is that domicile that determines his citizenship for purposes of diversity jurisdiction." *Id.* Overall, "[a]n individual's domicile is determined by his act of residence and his intent to remain, 'as disclosed by his entire course of conduct.'" *Hebert v. Duncan*, No. 6:19-CV-00984, 2021 WL 149473, at *1 (W.D. La. Jan. 14, 2021) (internal citation and quotation omitted).

Salsbury's subjective intent aside, the vast majority of his personal and civic connections to Florida are also present in Louisiana. Further, Salsbury's present "home," and homestead exemption, are in Louisiana. Salsbury is registered to vote, and

6

"resides" at least in part, in Louisiana. And his business activities are overwhelmingly rooted in Louisiana. Select has been a registered Louisiana limited liability company for more than a decade. Its registered office and mailing address – Salsbury's address – are in Louisiana. And there is no indication of record that Select has any business presence in Florida. Plaintiffs have the better of this argument.

C.    <u>Plaintiffs have failed to state a viable claim against Select.</u>

Defendants maintain that Plaintiffs have not stated a plausible claim against Select. As such, Select's citizenship should be ignored for jurisdictional purposes, and Plaintiffs' claims against Select should be dismissed.

The general-diversity statute permits federal district court jurisdiction over suits for more than $75,000 between citizens of different states. *See* 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Stangel v. A-1 Freeman North America, Inc.*, 64 Fed. Appx. 416, *1 (5th Cir. 2003). Remand is proper if at any time the Court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed, and any doubt as to the propriety of removal must be resolved in favor of remand. *See Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Defendants assert diversity based upon improper joinder. To demonstrate improper joinder of a resident defendant, federal courts have required removing defendants to demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.

7

*See Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 281 (5th Cir. 2007).[6] Where a defendant relies upon the second approach, the threshold question is whether there is any reasonable basis upon which the plaintiff may recover against a resident defendant. The removing party bears the burden of proof in this regard. *See Gasch*, 491 F.3d at 281. And a court must resolve all contested factual issues and legal ambiguities in favor of the plaintiff. *See Gasch*, 491 F.3d at 281; *see also Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 309 (5th Cir. 2005); *see also McKee v. Kansas City Southern Railway Co.*, 358 F.3d 329, 334 (5th Cir. 2004) (the district court must take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff).

A court may evaluate the plausibility of a disputed claim in one of two ways. *See Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2004), cert. den., 544 U.S. 992 (2005). First, a court may conduct a "Rule 12(b)(6)-type analysis," looking at the allegations of the complaint to determine whether the complaint states a facially plausible claim against the resident defendant. *See Smallwood*, 385 F.3d at 573. A court does not determine whether the plaintiff will actually – or even probably – prevail on the merits of the claim, but looks only for a possibility that it might do so. *See*

---

[6] In *Williams v. Homeland Insurance Co. of New York*, 18 F.4th 806, 814-15 (5th Cir. 2021), the United States Fifth Circuit Court of Appeals has expressly declined to adopt the Tapscott procedural, or fraudulent, misjoinder theory.

*Guillory*, 434 F.3d at 309. Ordinarily, if a claim survives this analysis, there is no improper joinder. *See Smallwood*, 385 F.3d at 573.[7]

Alternatively, in limited circumstances, a court may conduct a "summary inquiry" where a plaintiff may have misstated or omitted discrete facts that would illustrate the propriety of joinder. *See Smallwood*, 385 F.3d at 573. A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the resident defendant. *See Smallwood*, 385 F.3d at 574. "[A]ny piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. . . . [T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *See Smallwood*, 385 F.3d at 574. Given the nature of the disputed allegations – but with the important caution that the Court cannot and should not conduct a "summary judgment inquiry" – the Court exercises its discretion to consider summary inquiry evidence here.

In his statement, Salsbury maintains that Select: (1) was not a mineral lessee, operator, or interest holder in any exploration and production activities conducted on

---

[7] Pursuant to Fed. R. Civ. P. rule 12(b)(6), "a complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiffs' property; (2) was not named in the Operator History or in the list of mineral lessees included in Plaintiffs' original petition, and; (3) did not otherwise have a contractual relationship with Plaintiffs.  ECF Nos. 1 at 12, 1-3 at 2.  Defendants further assert – correctly – that Plaintiffs did not make any factual allegations against Select specifically, and in fact, only mentioned Select once in the petition as a listed defendant. ECF No. 1 at 12-13.

Select had a contract with the Louisiana Department of Natural Resources to do some plugging and abandoning work on one well on Plaintiffs' property, but that work did not give rise to any particular duty to, or create any significant relationship with, Plaintiffs.  The duty to remediate oilfield contamination exists under the prudent operator standard of the Mineral Code and under the Louisiana Civil Code.  *See Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 259-60.  That duty exists prior to termination of the lease under La. R.S. 31:22, La. C.C. arts. 2683, 2686, 2687, and 2792.  *See id.* at 256.[8]

---

[8] "A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee." La. R.S. 31:122; *see also* La. Civ. Code arts. 2683, 2686, 2687, 2692.

Additionally, "as a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm." *Roman Cath. Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co.*, 618 So. 2d 874, 879 (La. 1993).  "[I]n the absence of an express lease provision, Mineral Code article 122 does not impose an implied duty to restore the surface to its original, pre-lease condition absent proof that the lessee has exercised his rights under the lease unreasonably or excessively." *Terrebonne Par. Sch. Bd. v. Castex Energy, Inc.*, 2004-

10

The Louisiana Oilfield Site Restoration Law also defines a 'Responsible party' as follows:

> the operator of record according to the office of conservation records, who last operated the property on which the oilfield site is located at the time the site is about to be abandoned, ceases operation, or becomes an unusable oilfield site, and that operator's partners and working interest owners of that oilfield site. A working interest owner is the owner of a mineral right who is under an obligation to share in the costs of drilling or producing a well on the oilfield site.

See *Litel Explorations, L.L.C. v. Aegis Development Company, L.L.C.*, 2021-741 (La. App. 3 Cir. 4/6/22), 337 So. 3d 940, 949, writ den., 2022-00756 (La. 9/27/22), 346 So.3d 787.

In *Simoneaux v. Jolen Operating Co.*, 2004 WL 2632957, at *1 (E.D. La. 2004), the court dismissed the landowner's suit against defendants who were oilfield service companies responsible for closing pits located on the plaintiffs' property.  The court found those defendants: never conducted, directed, controlled or participated in oil and gas exploration and production activities on the subject properties; were not mineral lessees, operators, working interest owners, non-operating working interest owners or joint-venturers in any of the exploration and production activities; no privity of contract existed between those defendants and the plaintiffs; and there was no recognized legal duty owed by those defendants to the plaintiffs. The court concluded that, as a matter

---

0968 (La. 1/19/05), 893 So. 2d 789, 801.

of Louisiana law, those defendants are not legally responsible for the closure of pits on plaintiff's property.

Likewise, in *Jackson v. Apache Corp. of Delaware*, 2022 WL 6274999, at *6 (W.D. La. 2022), report and recommendation adopted, 2022 WL 628887 (W.D. La. 2022), the court held that landowners failed to state a viable claim against an oilfield service company that did not operate any wells, equipment, or facilities on plaintiffs' property. The court further found the service company, which was employed by the operator to close pits, did not owe a recognized legal duty to the plaintiffs and was not legally responsible for the closure of pits on plaintiff's property as a matter of law.

Plaintiffs have not adequately alleged that there was a legal basis for potential liability against Select. Plaintiffs have not averred that Select was an operator on, or a lessee or owner of, their land, or that they had a contractual or other legal relationship with Select that may give rise to liability. Accordingly, Select was improperly joined. Its citizenship should be disregarded for purposes of diversity jurisdiction.

Remand is unwarranted. Dismissal of Plaintiffs' claims against Select, however, is appropriate.

## III. <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that Plaintiffs' Motion to Remand (ECF No. 28) be DENIED.

IT IS FURTHER RECOMMENDED that Select's Motion to Dismiss (ECF No. 39) be GRANTED, that Plaintiffs' claims against Select be DISMISSED WITHOUT

PREJUDICE, and that Select be dismissed as a party to this lawsuit.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __9th__ day of September 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge

13